UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GLUTH BROS. CONSTRUCTION, INC., | ) | Case No.  07 B 71375 |
| | ) | |
| Debtor. | ) | Honorable Manuel Barbosa |

**CREDITOR TRUSTEES' POST-HEARING
MEMORANDUM (ADOPTING U.S. TRUSTEE'S FINDINGS
OF FACT AND CONCLUSIONS OF LAW)  IN FURTHER
SUPPORT OF CREDITOR TRUSTEES' OBJECTION TO QUERREY
& HARROW'S FINAL APPLICATION FOR COMPENSATION AND MOTION
TO COMPEL QUERREY & HARROW TO DISGORGE ALL FEES AND COSTS AND
TO TURNOVER THE DISGORGED FEES AND COSTS TO THE CREDITOR TRUST**

INTRODUCTION

More than two years ago, Charles Dixon and Charles Graber, Jr., not individually but solely as trustees ("*Creditor Trustees*") of the Gluth Bros. Construction, Inc. ("*Debtor*") Creditor Trust ("*Creditor Trust*"), and the United States Trustee, each requested that this Court order Querrey & Harrow, Ltd. ("*Q&H*") to disgorge, and to turnover to the Creditor Trust, all fees and costs Q&H obtained in relation to this bankruptcy case.  Both the Creditor Trustees and the U.S. Trustee asserted straightforward fact propositions under well-settled law warranting the relief requested:

- Q&H was not a disinterested party within the meaning of the U.S. Bankruptcy Code when it applied to this Court to represent the Debtor, despite Q&H's representation to this Court – under oath – to the contrary; and

- Q&H's undisclosed interest in favor of Frank Gluth, Debtor's sole shareholder, sole director and president, resulted in Q&H favoring individual and personal

interests of Frank Gluth, over the interests of Debtor, a dereliction of Q&H's fiduciary duty as Debtor's counsel.

The recent evidentiary hearing conducted by this Court confirmed that:

1) the Creditor Trustees and the U.S. Trustee are correct and their respective objections and motions are well-founded;

2) the Creditor Trustees and U.S. Trustee's respective objections to Q&H's final application for compensation should be sustained;

3) the Creditor Trustees and U.S. Trustee's respective motions and requests that Q&H disgorge all fees and costs it obtained in connection with this bankruptcy case should be granted; and

4) the Court should order Q&H to disgorge and turnover to the Creditor Trust – without delay – all fees and costs, including interest earned thereon.

In short, the evidence unequivocally shows that:

- Q&H flagrantly and intentionally violated the rules of this Court from the outset of its request to represent the Debtor;

- Q&H attempted to shield those violations, and its representation of and interest in Frank Gluth, from review by this Court, the U.S. Trustee and others with interest in the Debtor's estate by submitting false and misleading filings with this Court and by omitting from those filings property belonging to the bankruptcy estate;

- Q&H allowed Frank Gluth to plunder Debtor's estate; and

- Q&H acerbated an already bad situation by delaying resolution of the bankruptcy proceeding.

2

In so doing, Q&H breached the trust this Court placed in Q&H to represent the Debtor, to comply with the law and, simply put, to do the right thing.

By its self-focus, Q&H prospered handsomely even though it provided no value to the estate in light of its misconduct. *In stark contrast, the hundreds of unsecured creditors that comprise the Creditor Trust are the victims of Q&H's wrongdoing.* They too entrusted Q&H to do the right thing – to maximize estate assets, having provided millions of dollars worth of services to Debtor for which they have not been paid. Instead, Q&H substantially contributed to the economic harm each of the unsecured creditors – and their respective employees (or former employees) – has sustained and endured these past several years. Estate assets were plundered and rendered forever unrecoverable on Q&H's watch. That is unforgiveable, plain and simple, at any time. The attendant harm is magnified multiple-fold in these tough economic times.

The well-known adage – "You've made your bed and you'll have to lie in it" – squarely applies here. Q&H intentionally gamed the system, ignored its lawful obligations, mislead this Court and the U.S. Trustee and violated the integrity of the bankruptcy process. And, in so doing, Q&H harmed the Creditor Trust and its beneficiaries. There is no doubt as to Q&H's misconduct in the first place. Nor can there be any doubt that Q&H's misconduct, and its attendant harm, continues because Q&H fails to voluntarily admit its wrongdoing and to face the concomitant consequences well-settled law imposes. Q&H's continued opposition to disgorgement and turnover is, or at the very least borders on, inexplicable.

## **PROCEDURAL POSTURE**

At the conclusion of the evidentiary hearing in this matter, the Court "request[ed] the parties to submit Proposed Finding of Fact and Conclusions of Law." (Tr. at 723.) In its Order dated September 8, 2011, the Court directed "both parties" to file their "Findings of

3

Fact/Conclusions of Law" on September 8, 2011. (Dkt. No. 891.) The September 8 Order, and its reference to "both parties" left the Creditor Trustees uncertain as to whether the Court expects a separate Proposed Findings of Fact and Conclusions of Law from the Creditor Trustees. To alleviate any such uncertainty, and, as well, to alleviate the burden that would be placed on this Court from such a separate filing by the Creditor Trustees, the Creditor Trustees hereby adopt and incorporate by reference the Proposed Findings of Fact and Conclusions of Law that the Creditor Trust files in this matter (Dkt. No. 900), with which Q&H should not – and as a matter of fact and law, cannot – quibble. After all, the U.S. Trustee and the Creditor Trust here assert the same position and seek the same primary relief – full disgorgement and turnover by Q&H.

There should be no doubt that the Creditor Trustees remain steadfast in their (i) opposition to Q&H's retention of any fee or cost in obtained in relation to this bankruptcy case and (ii) request that those fees and costs be turned over to the Creditor Trust. But lest the Court have any doubt as to where the Creditor Trustees stand, the Creditor Trustees renew and incorporate herein by reference their:

- Objection to Final Application of Querrey & Harrow, Ltd. for Compensation of Counsel for the Debtor and Request for Disgorgement of All Fees and Expenses (Dkt. No. 667) and

- Motion to Compel Querrey & Harrow, Ltd. to Turn Over Disgorged Fees to Creditor Trust (collectively, with Dkt. No. 667 the "*Motion*") (Dkt. No. 866).

Based on the record, the Objection should be sustained and the Motion granted straightaway.

The Creditor Trustees note that the journey to resolution of this matter, and justice for beneficiaries of the Creditor Trust, have been long in coming. But Q&H's efforts to avoid resolution of the issue and discovery as to its misconduct ultimately are to no avail; simply, Q&H could not mask, and now cannot avoid, the truth. Frankly, from no later than the Objection

4

the Creditor Trustees filed in April 2009, Q&H should have thrown in the towel and done the right thing. Then, the Creditor Trustees noted that:

- they had (at that time in 2009) just recently discovered that Q&H represented Frank Gluth, the sole shareholder, sole director and president of Debtor, in his individual capacity both prior to and following the commencement of Debtor's chapter 11 case. (*see* Dkt. No. 667 at p. 3.)

- this fact "would never have come to light had counsel to the Creditor Trustees not come across a Q&H invoice – a document that was never intended to be shared with creditors – while reviewing the documents hastily left behind in the Debtor's office." (*Id.*)

- "At no time during this chapter 11 case, whether before or after the filing of any of its interim fee applications or the Final Fee Application, did Q&H file a supplemental affidavit under Bankruptcy Rule 2014 to disclose potential adverse interests to the estate." (*Id.* at p. 5; *see also id.* at p. 8 and Exh. A. thereto.)

- Q&H did nothing to stop Frank Gluth from pillaging Debtor's assets before the Creditor Trustees took possession of Debtor's estate. In other words, Q&H effectively aided in the concealment of property of Debtor's estate. (*Id.* at p. 13.)

The evidence submitted during the evidentiary hearing overwhelmingly confirms those allegations.

Of course, as the Court well knows, aside from being long, the road to this day also has been troubled as a direct result of Q&H's misconduct. Even prior to the Creditor Trustees' discovery in 2009 of Q&H's misrepresentation to this Court and the Creditor Trustees' subsequent efforts to further uncover Q&H's wrongdoing, the unsecured creditors attempts to maximize the value of Debtor's estate and, consequently, the distributions they stand to receive

5

on account of their claims were, to state it mildly, frustrated. As the Court will recall, in fall 2008, Debtor, as well as Q&H, stalled the plan confirmation process by reassuring counsel to the Official Committee of Unsecured Creditors ("*Committee*") and, by extension, Debtor's creditors (now beneficiaries of the Creditor Trust), that Debtor's business was viable and could be reorganized. Of course, we now know that it should have been clear to Q&H – who by that time had represented both Debtor and Frank Gluth, in his individual capacity, for more than a year – that Debtor ceased operating and had no intention of resuming operation.[1]  Q&H's false promises on behalf of Debtor – and, obviously, on behalf of Frank Gluth – gave the unsecured creditors hope regarding Debtor's prospects for reorganization where none, in fact, existed. In the meantime, months passed, allowing Debtor to conceal assets – now, apparently, forever lost – and Q&H to accrue fees for services that proved to be of no benefit to Debtor's estate. To that end, Q&H's misconduct and delay resulted in the Committee itself having to file its own plan of liquidation in 2009. Otherwise, surely, more assets would have been lost and fees wasted on Q&H's purported services.

---

[1] Debtor's monthly operating report for the month ending February 2008 (Dkt. No. 326) set forth over $370,000 in income. But by March 2008, Debtor's income was down to approximately $14,000. (Dkt. No. 491.) By May 2008, Debtor's income stood at approximately $1,500. (Dkt. No. 491.) That rapid downward spiral should have been telling to Q&H. As of July 2008, Debtor had no income from operations whatsoever. (*See* Dkt. Nos. 516, 548, 557, 567 and 570.) The Court, of course, can take judicial notice of court papers, and the contents thereof and representations therein, that a party filed in this bankruptcy matter. *See General Elec. Capital v. Lease Resolution*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records." (citation and internal quotation marks omitted)).

That judicial notice, of course, includes the authority to take notice Q&H misrepresentations set forth in the June 6, 2007 "Motion to Employ Counsel for the Debtor" that Q&H prepared, signed and filed on behalf of Debtor and the misrepresentations contained in the affidavit that Q&H filed in support thereof. (*See* Dkt. No. 5 at ¶ 5 and Dkt. No. 5-1 at ¶¶ 4-6.) Of course, Q&H's misrepresentations at the outset set in play the chain of unfortunate circumstances that lead to this situation and the substantial harm and hardship the Creditor Trust and its members have incurred. Had Q&H simply followed its obligations, it would have been precluded from representing Debtor. (*See* Dkt. No. 667 at ¶¶ 20-36; *see also* Dkt. No. 865 at pp. 3-5.)

6

<u>**CONCLUSION**</u>

The evidence unequivocally shows that Q&H caused the situation it now faces. Q&H knew better. Regardless, it now must face the consequences of its actions and omissions – consequences that application of well-settled law to the facts require. As such, the Creditor Trustees respectfully request that the Court bring this unfortunate aspect of this bankruptcy case to an end by:

1) sustaining the Creditor Trustees' Objection to Final Application of Querrey & Harrow, Ltd. for Compensation of Counsel for the Debtor and Request for Disgorgement of All Fees and Expenses (Dkt. No. 667);

2) granting the Creditor Trustees' Motion to Compel Querrey & Harrow, Ltd. to Turn Over Disgorged Fees to Creditor Trust (collectively, with Dkt. No. 667 the "*Motion*") (Dkt. No. 866);

3) sustaining the U.S. Trustee's objection to Q&H's final application for compensation and granting the U.S. Trustee's request that Q&H disgorge and turnover to the Creditor Trust all fees and costs Q&H earned in this case (Dkt. Nos. 666 and 865);

4) ordering Q&H to disgorge all of the fees and costs it obtained in conjunction with this bankruptcy case, both before and after the Petition Date and including fees and costs paid directly by Frank Gluth, in an amount not less than $321,844.35 in fees and $9,324.13 in costs (*see* Dkt No. 684), plus interest thereon;

5) awarding to the Creditor Trust the full amount of fees and costs the Court orders Q&H disgorge, plus interest;

6) ordering Q&H to turnover to counsel for the Creditor Trust the full amount awarded to the Creditor Trust within three (3) business days of entry of the Court's Order; and

7) awarding to the Creditor Trust such other and further relief as the Court deems just and appropriate. (To that end, the Creditor Trustees reserve the right to file a motion seeking reimbursement of the fees and costs the Creditor Trust has incurred these past several years as a result of Q&H's wrongful conduct.)

       Respectfully submitted,

       **CHARLES DIXON AND CHARLES GRABER JR., NOT IN THEIR INDIVIDUAL CAPACITIES, BUT SOLELY AS CREDITOR TRUSTEES OF THE GLUTH BROS. CONSTRUCTION**

       By: /s/ Aaron L. Hammer
           One of their Attorneys

Aaron L. Hammer (No. 6243069)
John T. Shapiro (No. 6207791)
Brian J. Jackiw (No. 6296807)
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000

*Counsel for Charles Dixon and Charles Graber, Jr.,*
*not in their individual capacities, but solely as*
*Trustees of the Gluth Bros. Construction, Inc. Creditor Trust*

Dated: September 8, 2011